# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 25-59C
(Filed: November 10, 2025)

|  |  |
|---|---|
| **IGNATIUS M. TEE, JR.**, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*Jason J. Greene*, Military Justice Firm, PLLC, Seattle, WA, for plaintiff.

*Anne M. Delmare*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the briefs were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice. *Lt. Andrew T. Sayer*, General Litigation Division, Office of the Judge Advocate General, U.S. Navy, Of Counsel.

## OPINION AND ORDER

**BONILLA, Judge**.

Plaintiff Ignatius M. Tee, Jr. enlisted in the United States Navy in 2015, serving on active duty as an aviation structural mechanic, and rising to the rank of Petty Officer First Class (PO1/E-6). After his acceptance into the Seaman to Admiral-21 (STA-21) program in 2022, PO1 Tee enrolled in a Naval Reserve Officers Training Corps (NROTC)-affiliated university, which placed him on track to receive a commission upon graduation. During his second year of the three-year program, PO1 Tee's commanding officer convened successive Performance Review Boards (PRB) to address allegations that the Sailor had engaged in inappropriate behavior. These proceedings led to PO1 Tee's disenrollment from the STA-21 program. PO1 Tee has since returned to active duty as an enlisted service member, and the Navy has declined to reimburse certain tuition payments.

Through this action, PO1 Tee challenges the procedures employed by the Navy in convening and conducting each PRB and his consequent disenrollment from the STA-21 program. Pending before the Court is defendant's motion to dismiss nine of the ten counts included in PO1 Tee's second amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). For the reasons set forth below, defendant's motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

## BACKGROUND[2]

PO1 Tee enlisted in the Navy in 2015 and continues to serve on active duty as an aviation structural mechanic. In 2022, PO1 Tee was accepted into the prestigious STA-21 commissioning program, where he attended the Naval Science Institute in Newport, Rhode Island, before enrolling in the University of Arizona, in Tucson, Arizona (an NROTC-affiliated university) to pursue a bachelor's degree. Administered by the Naval Service Training Command (NSTC), the three-year STA-21 program offers active-duty enlisted Sailors up to $10,000 per year in tuition reimbursement, supplemented by the GI Bill. While attending school full-time, officer candidates enrolled in the program remain on active duty and report to the NROTC unit on campus.[3] Upon graduation, successful officer candidates receive a

---

[1] PO1 Tee commenced this military backpay case on January 14, 2025. After filing successive motions for additional time, defendant filed a motion to dismiss plaintiff's complaint similar to the one adjudicated today. PO1 Tee responded with two amended complaints. Defendant filed a renewed motion to dismiss on July 14, 2025. After securing three extensions of time, PO1 Tee responded to defendant's dispositive motion on October 6, 2025. In the interim, on October 1, 2025, citing the lapse in federal appropriations and consequent government shutdown, defendant filed an unopposed motion to stay proceedings. Rather than grant an indefinite stay, the Court extended the briefing schedule. Citing the continuing government shutdown, defendant sought a further extension on November 4, 2025. After reviewing the parties' filings to date, the Court determined that defendant's reply brief and oral argument are unnecessary. Whatever the ultimate outcome of this matter, the continuing impact on PO1 Tee's naval career demands moving this case forward.

[2] In resolving defendant's motion to dismiss, the facts are largely drawn from plaintiff's complaint, as amended, corroborating administrative proceedings cited in and appended to the parties' pleadings and filings, and undisputed publicly available information. *See Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 696 (2023) (In assessing an RCFC 12(b)(1) motion to dismiss, "[t]he court is not limited to the pleadings to assure itself of its jurisdiction; it may 'inquire into jurisdictional facts' to confirm jurisdiction." (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991))); *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (In evaluating a complaint for sufficiency under RCFC 12(b)(6), the court is "not limited to the four corners of the complaint. [The court] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" (quoting 5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004))).

[3] "The term 'officer candidate' is used to refer to any enlisted member in any commissioning program overseen by NSTC, such as those members in the STA-21 . . . program[]." NSTC M-1533.2E § 1-3 ¶ 5. For clarity, NSTC M-1533.2E is a citation to the April 2023 version of the Naval Service Training

commission as an Ensign (ENS/O-1) and continue serving on active duty as officers. Because program participants remain on active duty, they must adhere to the conduct and aptitude standards outlined in the Naval Manual.  *See* NSTC M-1533.2E § 3-19.

On November 9, 2023, PO1 Tee's commanding officer—the Professor of Naval Science (PNS) for the on-campus NROTC unit—initiated a PRB to address allegations of substandard performance.[4] Specifically, PO1 Tee was alleged to have engaged in "inappropriate relationships with midshipmen within the battalion" during the fall 2023 semester.  ECF 15 at 5 ¶ 16.

The Naval Manual provides a general overview of the intended purpose and content of a PRB:

> The PRB is an administrative tool available to the PNS to investigate, review, and document recommendations regarding the best course of action to be taken to ensure successful fulfillment of program requirements by students enrolled in any NSTC officer development program. . . .
>
> . . . The PRB is not a judicial proceeding but rather an informal administrative hearing most similar to a college or university academic review board. As such, the student is not entitled to be represented by an attorney at the hearing . . . . The PRB will be conducted with formality and decorum, although testimony under oath is not necessary, it is permissible. The student has the right to appear before the board, to submit a written statement, and to present documents or witnesses on the student's behalf. The student will be counseled by the class advisor and shall be given the opportunity to review all evidence to be presented to the board prior to convening.

NSTC M-1533.2E § 6-9 ¶¶ 1–2.  Addressing the composition of the investigative body, the Naval Manual provides:

---

Command Regulations for Officer Development Programs Manual (Naval Manual).  This version was updated to NSTC M-1533.2F on February 5, 2025.  *See Regulations for Officer Development (ROD) Programs*, NAVAL SERV. TRAINING COMMAND (Feb. 5, 2025) (executive summary), *available at* https://perma.cc/2FMR-4WKH.  Because the challenged actions took place before the February 2025 update, the April 2023 version of the Naval Manual governs this case.

[4] The senior military officer assigned to an on-campus NROTC unit is given the academic rank of PNS. NSTC M-1533.2E § 3-3 ¶ 1(a) (citing 10 U.S.C. § 2102).  A PNS has the responsibility to, among other things, "ensure each student meets Navy and university requirements for graduation and commissioning."  *Id.* § 3-3 ¶ 1(b).  The PNS is also charged with enforcing applicable academic and professional conduct standards.  *See id.* §§ 3-19, 6-7.

> The PRB shall consist of at least three voting members (an uneven number composed of at least two officers and, potentially, a representative of the academic institution) and one non-voting member (officer or senior enlisted) to serve as the recorder. The PNS may also appoint one other non[-]voting board member[] (e.g., the student's company or battalion commander) to advise the senior board member on the student concerned.

*Id.* § 6-10 ¶ 1. "To avoid conflicts of interest, only persons who have no involvement with the matters before the board may be appointed as voting members." *Id.* § 6-10 ¶ 3. The non-voting recorder, in turn, is "normally the student's class advisor and is typically the most familiar with the student's performance and conduct. The recorder is responsible for preparing and presenting the case on behalf of the command." *Id.* § 6-10 ¶ 5. The convening order designated PO1 Tee's class advisor as the recorder. ECF 15 at 5 ¶ 16.

When served with the November 9, 2023 PRB convening order and presented with an acknowledgement of rights and waiver form, PO1 Tee requested time to retain counsel. A week later, PO1 Tee sought a copy of all evidence that would be presented during the PRB, consistent with the acknowledgment of rights form. According to PO1 Tee, the recorder denied both requests. The PRB convened on November 21, 2023. PO1 Tee charges that the administrative proceeding violated myriad provisions of the Naval Manual by: failing to conduct a pre-PRB inquiry and produce the preliminary investigation report; appointing board members with conflicts of interest (i.e., personal knowledge of the events underlying the allegations); relying on an undisclosed "secret document" and withholding evidence; improperly compelling PO1 Tee's testimony; failing to adhere to required decorum in making ad hominem attacks; and failing to cite Navy regulations in support of the board's findings and recommendations. ECF 15 at 7–9 ¶¶ 26–38. The PRB unanimously concluded that PO1 Tee "did pursue or attempt to pursue inappropriate relationships with [midshipmen] within the battalion and [] did not meet aptitude standards," and recommended that the Sailor be placed on administrative leave pending his disenrollment from the STA-21 program. ECF 15 at 9 ¶ 38.

After retaining counsel, PO1 Tee formally objected to the PRB proceedings and disenrollment recommendation. Several months later, the PNS initiated a new PRB, preceded by a pre-PRB investigation. The revised charge of substandard aptitude performance again focused on PO1 Tee's alleged conduct in the fall of 2023; namely, "inappropriate behavior toward female Officer Candidates and female Midshipmen and inappropriate personal conduct." ECF 16-1 at 47. PO1 Tee unsuccessfully pursued emergency relief in the United States District Court for the District of Arizona, seeking to enjoin the Navy from proceeding with the May 16, 2024 hearing pending the exhaustion of his appeal of the November 21, 2023 PRB, which PO1 Tee argued was unlawfully aborted by the PNS's decision to convene a new PRB. *See Tee v. Shea*, No. 24-240, 2024 WL 2153524 (D. Ariz. May 14, 2024).

4

On June 11, 2024, the PRB reported its findings and recommendations to the PNS, again unanimously concluding "that [PO1] Tee did not meet aptitude standards." ECF 16-1 at 49. In two successive split votes (2 to 1), the board recommended that PO1 Tee be placed on administrative leave pending disenrollment from the STA-21 program and that the Navy recoup all tuition payments. The dissenting votes recommended the lesser disciplinary action of placement on leave of absence without tuition recoupment. On appeal to the NSTC, PO1 Tee raised a host of issues related to the proceedings before the May 16, 2024 PRB, including: failing to timely produce a complete copy of the preliminary investigation report; untimely disclosing unredacted witness statements; issuing a no-contact order that prevented PO1 Tee from effectively questioning and presenting witnesses; appointing the same recorder for both PRBs; compelling PO1 Tee's testimony and then adopting a negative inference based on his assertion of the right to remain silent; improperly coaching the alleged victim and witnesses; applying improper standards of proof before the PRBs and on appeal; relying on an undisclosed letter from the Navy Bureau of Medicine (BUMED); failing to duly consider less severe sanctions; erroneously conflating aptitude with disciplinary conduct; and failing to include the reasons supporting the dissenting votes.[5]

Following the denial of his appeal, the NSTC disenrolled PO1 Tee from the STA-21 program effective November 14, 2024, and ordered his return to active enlisted service. Although the NSTC did not direct tuition recoupment, no additional program funds were distributed toward PO1 Tee's college education. Notwithstanding his disenrollment from the STA-21 program, PO1 Tee graduated *cum laude* from the University of Arizona in May 2025 with a Bachelor of Applied Science in Cyber Operations. PO1 Tee then reported to his next (and current) operational unit as an enlisted, active-duty Sailor.

In his operative complaint, PO1 Tee pleads ten counts, the first nine charging various violations of the Naval Manual and Navy regulations in connection with PRB-1, PRB-2, and his resulting disenrollment from the STA-21 program. The tenth count asserts that the NSTC improperly failed to remit tuition payments predating PO1 Tee's disenrollment. PO1 Tee seeks vacatur and setting aside of both PRBs' findings and recommendations, reinstatement into the STA-21 program, and backpay in the form of tuition reimbursement.[6] The government moves to dismiss Counts I through IX, explaining that Count X requires further investigation into tuition

---

[5] For clarity, all future references to "PRB-1" relate to the PRB hearing conducted on November 24, 2023. References to "PRB-2" relate to the PRB hearing conducted on May 16, 2024.

[6] PO1 Tee also presumably seeks the delta in pay and benefits between an enlisted Sailor and a commissioned officer following his college graduation. This relief is not specifically identified in the operative complaint, but it would likely be included in "all other relief" that this Court would deem "just and appropriate" in the event that PO1 Tee prevails. ECF 15 at 43 ¶ 221.

5

reimbursements requested prior to PO1 Tee's November 2024 disenrollment from the STA-21 program. PO1 Tee does not oppose dismissal of Counts VI and IX.[7]

## DISCUSSION

I.    Standards of Review

This Court's jurisdiction is limited to claims and forms of relief for which the United States has affirmatively waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). When the Court's authority to entertain a cause of action is challenged or otherwise called into question under RCFC 12(b)(1), the onus is on the plaintiff to prove by preponderant evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In evaluating the jurisdictional propriety of a claim, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (first citing *Scheuer v. Rhodes*, 416 U.S. 232, 236–37 (1974); and then citing *Catawba Indian Tribe v. United States*, 982 F.2d 1564, 1568–69 (Fed. Cir. 1993)). If the Court determines it lacks subject-matter jurisdiction over a claim, it must dismiss the claim "in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

A claim that survives a jurisdictional challenge may nonetheless be dismissed for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). When considering whether a plaintiff has asserted a cognizable and redressable claim, this Court "must accept as true all the factual allegations in the complaint . . . and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). "A trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" *Id.* (quoting *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989)). Assertions of legal conclusions, however, are not credited during this assessment, and the complaint must include nonconclusory factual allegations setting forth a plausible—as opposed to merely conceivable—claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

II.    Subject-Matter Jurisdiction

A.   Mootness

The Court begins with mootness. *Merritt v. Wilkie*, 965 F.3d 1357, 1360 (Fed. Cir. 2020) ("Where the underlying controversy is moot, the preferred course is

---

[7] Count VI maintained that the proceedings before the PRBs and on appeal operated without clearly defined standards of review. Count IX alleged that the PRB-2 report failed to append a written opinion by the dissenting member, purportedly in violation of NSTC M-1533.2E § 6-13 ¶ 1 ("Any board member may submit a dissenting opinion and append it to the report.").

6

to decide mootness, before reaching difficult questions more closely tied to the merits of the underlying controversy . . . ." (cleaned up) (quoting *Kaw Nation v. Norton*, 405 F.3d 1317, 1323 (Fed. Cir. 2005))).  "[M]ootness . . . addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'" *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (emphasis omitted; second and third alterations in original) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

Where, as here, certain relief sought has already been granted, any claim seeking that relief is moot and must be dismissed. *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024) (first quoting *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007); and then citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016)); *e.g.*, *Causam Enters., Inc. v. Int'l Trade Comm'n*, __ F.4th __, No. 23-1769, 2025 WL 2919058, at *6 (Fed. Cir. Oct. 15, 2025) ("Although we conclude that [appellant] has standing, we may not exercise jurisdiction if this case is moot."). Among the relief PO1 Tee seeks is an order "set[ting] aside the recommendations of PRB 1 . . . ." ECF 15 at 43 ¶ 215 (alteration to capitalization). But the findings and recommendations of PRB-1 have already been voided, so there is nothing left of PRB-1 to set aside.

Counts I, II, IV, and VIII relate in whole or in part to the PRB-1 proceedings and the decision by the PNS to convene PRB-2 rather than adjudicate PO1 Tee's purported appeal of PRB-1. PO1 Tee maintains that the PRB-1 findings and recommendations remain live because the PNS did not follow Naval regulations in aborting the PRB-1 proceedings and convening PRB-2. In making this argument, PO1 Tee presents PRB-1 to the Court trapped in amber, alleging that invalidating the PRB-2 proceedings would melt away PRB-1's casing and resurrect its findings. Like the preserved remains doomed to those golden prisons, however, PRB-1 has perished beyond revival. All that remains is the fossil record.

The Naval Manual outlines the procedure to which the PNS must adhere after the PRB issues its findings and recommendations:

> <u>PNS Endorsement</u>: Once the student has had an opportunity to respond to the PRB report, the PNS will consider the package in its totality and endorse the board report, either concurring or non-concurring with the findings and recommendations of the board in the PRB PNS Recommendation Letter . . . .

NSTC M-1533.2E § 6-13 ¶ 3. The student is then provided a copy of the PNS recommendation letter and afforded "up to five full business days to respond to the recommendations in the PNS's endorsement." *Id.* § 6-13 ¶ 4. If the student submits a response to the PNS's recommendation letter, then the PNS is charged with adjudicating the appeal in the first instance. *Id.* at App'x G (appeal flowchart). A "favorable" adjudication terminates the appeal, whereas a "not favorable"

adjudication sends the matter to NSTC Officer Development.[8]  Continued "not favorable" adjudications are forwarded to the NSTC for Sailors.

This case raises a novel question: what happens when the PNS declines to endorse a PRB's findings and recommendations and elects to convene a new PRB in its stead?  PO1 Tee argues that, until the PNS endorses a PRB's findings and recommendations (regardless of whether the endorsement is concurring or non-concurring), those findings and recommendations remain live, and the first PRB remains subject to challenge.  Not so.  The Naval Manual allows for certain situations—like here—in which the PNS may void a PRB's findings and recommendations by declining to endorse them and, instead, taking alternative actions consistent with the PNS's vested discretion (e.g., convening a new PRB to begin the administrative investigation anew).  *See Tee*, 2024 WL 2153524, at *4 ("The NSTC M-1533.2E does not explicitly permit convening a second PRB but it also does not explicitly prohibit it.").  PO1 Tee's contention that the PNS is required in every instance to affix a rubber-stamp endorsement to a PRB's findings and recommendations misapprehends the import of the PNS's continuing role in the appeal process.

As an initial matter, PO1 Tee's suggestion that the Naval Manual strictly requires a PNS to endorse the PRB's findings and conclusions is misplaced.  The Naval Manual directs the PNS to "consider" the "totality" of the record presented in exercising his or her judgment as to how to proceed with respect to the PRB.  NSTC M-1533.2E § 6-13 ¶ 3.  While the regulation identifies two options—an endorsement concurring or an endorsement non-concurring with the PRB's findings and recommendations—the PNS may inherently choose neither if the PNS believes the PRB was procedurally unfair.  Under these circumstances, which PO1 Tee concedes existed here, *see, e.g.*, ECF 27 at 18, declining to endorse the PRB and, instead, initiating a new board is permissible.  *See* NSTC M-1533.2E § 6-9 ¶ 1 ("The PRB is an administrative tool available to the PNS . . . .").  To conclude otherwise would render the PNS's required "consider[ation]" of the "totality" of the record and subsequent exercise of independent judgment a meaningless, symbolic ritual.[9]  *See Bannister v. United States*, 139 F.4th 1300, 1303–04 (Fed. Cir. 2025) ("Statutory interpretation is a 'holistic endeavor' that requires, 'at a minimum, [that courts] account for a statute's full text, language as well as punctuation, structure, and

---

[8] NSTC Officer Development—denoted as "OD" in Appendix G—refers to "the Program Manager and the point of contact for NSTC OD programs and procedures."  *Compare* NSTC M-1533.2B § 1-2 ¶ 3 (Aug. 2017), *with* NSTC M-1533.2E at App'x G.

[9] *See Consider*, MERRIAM-WEBSTER ("Consider" is defined as "to think about carefully," "to regard or treat in an attentive or kindly way," and "to come to judge or classify."), *available at* https://perma.cc/3ECX-6GEF; *Endorse*, MERRIAM-WEBSTER ("Endorse" is defined as "to approve openly" and "*especially*: to express support or approval of publicly and definitely."), *available at* https://perma.cc/AF28-ZPBS; *Endorsement*, MERRIAM-WEBSTER ("Endorsement" is defined as a "sanction" or an "approval."), *available at* https://perma.cc/LL53-HV5C.

subject matter.'" (quoting *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993))).

Moreover, as outlined *supra*, had the PNS issued a PRB-1 recommendation letter, the next step in the appeal process would require the PNS to review PO1 Tee's response to the PNS's *own* endorsement—akin to a motion for reconsideration. Rather than register his concurrence or non-concurrence with the PRB-1 findings and recommendations and await PO1 Tee's response to further consider the matter, the PNS sua sponte voided PRB-1 by instituting PRB-2. In doing so, the PNS gave PO1 Tee the relief he sought (and still seeks): vacatur, or setting aside, of PRB-1 and its findings and recommendations. PO1 Tee does not explain how his challenge to PRB-1 would have ended any differently, much less how he would have been better off as to PRB-1, if he had been afforded the appeal process he alleges he was improperly denied. PO1 Tee does not allege the PNS had any reason to change course and issue a "not favorable" decision (i.e., denying his appeal) after engaging in the sought-after, and purely procedural, exercise of rubber stamping PRB-1's findings and recommendations.[10]

At bottom, PO1 Tee's challenges to the PRB-1 proceedings are moot, and to the extent Counts I, II, IV, and VIII rely on those claims, they must be dismissed.[11] *See Hernandez v. Dep't of Air Force*, 498 F.3d 1328, 1333 (Fed. Cir. 2007) (plaintiff's claims are moot where military already afforded complete relief). *Compare* ECF 15 at 43 (Prayer for Relief: "SET ASIDE the recommendations of PRB 1 and the majority in PRB 2."), *with* ECF 16-1 at 47–48 (PRB-2 convening order effectively voiding PRB-1 findings and recommendations), *and Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986) (courts cannot order the federal government to do something that has already been done).

---

[10] Contrary to PO1 Tee's contention, the PNS's decision to convene a new PRB did not render the adjudication of PO1 Tee's appeal "not favorable." That is, PO1 Tee has not identified any reason to doubt that the PNS was poised to render a "favorable" finding on his appeal, which would have put him in the same place he is now with respect to PRB-1 (i.e., a set aside or voided PRB-1). Nor has PO1 Tee identified any better outcome he could have achieved as to PRB-1. *See Tee*, 2024 WL 2153524, at *4 (Government representation in collateral district court litigation "that the slate will be wiped clean with the second PRB, and it is as if, for purposes of any disenrollment determination, the first PRB never happened."). While PO1 Tee asserts he was prejudiced by the PNS's decision to convene PRB-2, his challenges to PRB-2 are separate and distinct from his appeal from the voided PRB-1, and they are treated as such here.

[11] Count I, focused entirely on PRB-1, is dismissed as moot. Counts II, IV, and VIII, which assert claims relating to both PRB-1 and PRB-2, are dismissed as moot insofar as they challenge the PRB-1 proceedings or request relief related to PRB-1. *See, e.g.*, ECF 15 at 30 ¶ 137 (Count II seeks vacatur and setting aside of PRB-1), 33–34 ¶¶ 159, 163 (Count IV challenges the decorum of the proceedings of PRB-1), 41 ¶ 205 (Count VIII contests the "structural framework" of PRB-1), 43 ¶ 215 (Prayer for Relief requests that the recommendations of PRB-1 be set aside).

B. Money-Mandating

Next, defendant challenges this Court's jurisdiction over PO1 Tee's claims—included in Counts IV and V—to the extent they rely on alleged violations of: U.S. Navy Regulations ch. 10 § 2 art. 1023 (Abuse of Authority), ch. 11 § 2 art. 1110 (Standards of Conduct), ch. 11 § 3 art. 1123 (Adverse Entries in Medical and Dental Records), ch. 11 § 4 art. 1131 (Requirement of Exemplary Conduct) (Sept. 14, 1990), issued under 10 U.S.C. § 8211 ("United States Navy Regulations shall be issued by the Secretary of the Navy."); and Department of Defense Instruction (DoDI) 1215.08 § 3.2(f) (Operation of ROTC Units: Disenrollment Procedures) (Mar. 7, 2018). In support, defendant avers the cited Navy regulations and DoD Instruction, as well as PO1 Tee's more general assertions of due process, are not money-mandating. *See Allen v. United States*, 88 F.4th 983, 986 (Fed. Cir. 2023) (per curiam) ("The Tucker Act does not create substantive rights, so a plaintiff filing in the Court of Federal Claims 'must identify a separate source of substantive law that creates the right to money damages.' . . . '[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act.'" (quoting *Fisher v. United States*, 402 F.3d 1167, 1172–73 (Fed. Cir. 2005) (en banc portion))). This argument loses sight of the forest for the trees.

PO1 Tee does not claim that PRB-2's violation of a particular Navy regulation or DoD Instruction, or other due process violation, entitles him to money damages from the federal government. Rather, he relies on those standards "to demonstrate the legal infirmity of the [Navy's] actions," *see Harkins v. United States*, 174 Fed. Cl. 592, 604 n.28 (2025), resulting in his disenrollment from the STA-21 program and consequent loss of tuition reimbursement.[12] *See* NSTC M-1533.2E § 7-2 (Scholarship Tuition, Fees, and Related Expenses). This Court's jurisdiction over military backpay claims "extends to determinations related to both alleged legal error and alleged injustice, so long as the requested correction would result in a money judgment." *Fuentes v. United States*, 157 Fed. Cl. 433, 453–54 (2021) (quoting *Bonewell v. United States*, 111 Fed. Cl. 129, 143 (2013)). The Court, therefore, may exercise jurisdiction over PO1 Tee's ultimate military backpay claims insofar as they call upon the proper implementation of the cited regulations.

III. Failure to State a Claim

As addressed in Section II(A), *supra*, in terminating PO1 Tee's appeal of PRB-1 by voiding the board's findings and recommendations, the PNS acted in accord with the relevant provisions of the Naval Manual. Asserting otherwise in Count II, PO1 Tee seeks to vacate and set aside the findings and conclusions of not only PRB-1 (relief which is now moot), but also those of PRB-2. Because the PNS acted within his authority in instituting PRB-2, the remainder of Count II is dismissed for failure

---

[12] PO1 Tee's disenrollment also cost the Sailor his eligibility to receive a commission upon graduation and the consequent pay delta between an E-6 and an O-1.

10

to state a claim upon which relief can be granted.  *See, e.g.*, *Brigante v. United States*, 35 Fed. Cl. 526, 532 (1996) (granting motion to dismiss for failure to state a claim upon which relief can be granted where "[t]he Navy's actions were within the powers delegated to it by statutes and Naval regulations, and met the minimum level of fairness").

In Count III, PO1 Tee charges that Navy officials improperly withheld relevant documents and information and precluded PO1 Tee and his counsel from preparing to question and present potential witnesses in advance of the PRB-2 hearing. Regarding documentary evidence, PO1 Tee maintains that Navy officials initially produced a "heavily redacted" version of the preliminary investigation report, then offered to allow PO1 Tee to read the unredacted version (under supervision, without counsel, and barred from taking notes), before finally producing an unredacted version of the report "only minutes before" the PRB-2 hearing.  ECF 15 at 12–13. PO1 Tee further contends the Navy withheld unredacted witness statements until just before the PRB-2 hearing.  The Navy's alleged failure to timely produce unredacted versions of these documents, according to PO1 Tee, violated Section 6-10 of the Naval Manual:

> No later than five full days (not counting the day of notification nor the day of the PRB) before the PRB is scheduled to convene, the recorder shall:
>
> . . .
>
> (2) Provide the student with any and all documents that may be presented in the case against the student, including but not limited to the PRB Convening Order, counseling sheets, witness statements, and a complete copy of the preliminary inquiry (if any);
>
> (3) Provide the student with a list of all witnesses expected to be called in the Recorder's case . . . .

NSTC M-1533.2E § 6-10 ¶ 6(a).

The parties' dispute regarding the timely production of the preliminary investigation report centers on the definition of "complete," as in "a *complete* copy of the preliminary inquiry."  *See id.* (emphasis added).  More specifically, the dispute is whether the redactions rendered the preliminary investigation report *in*complete.  At this early stage in the litigation—without comparing the redacted and unredacted versions of the preliminary investigation report—the Court is not in a position to adjudicate the Navy's compliance with the Naval Manual.[13]

---

[13] In reaching this conclusion, the Court necessarily declines defendant's invitation to conflate the terms "complete" and "necessary."  *See Complete*, MERRIAM-WEBSTER (defining complete as "having all

In contradistinction, the Naval Manual does not compel the production of *complete* witness statements. See NSTC M-1533.2E § 6-10 ¶ 6(a)(2) (term "complete" does not appear before "witness statements"). Although the ensuing subparagraph of the Naval Manual requires the disclosure of "a list of all witnesses expected to be called in the Recorder's case," *see id.* § 6-10 ¶ 6(a)(3), the universe of potential witnesses who gave statements in connection with an investigation and those expected to testify are rarely the same. Of note, according to PO1 Tee's complaint, "[t]he recorder called no witnesses." ECF 15 at 14. If true, the Navy may have been relieved of its obligation to tender a witness list (depending on when the decision not to call witnesses was made). All that said, the Court declines to decide these issues in the abstract. Review of the records produced, in context, is required.

Compounding the claimed redactions of the identities of potential witnesses, PO1 Tee asserts that a long-standing no-contact order—lifted just four days prior to the PRB-2 hearing—stymied his ability to interview and prepare to question and present witnesses. Unlike the production of unredacted documents, however, PO1 Tee does not cite any Navy regulation or DoD instruction reportedly violated by the Navy in this regard. Although he makes a passing reference to the five-day disclosure requirement included in Section 6-10 of the Naval Manual, the above-quoted regulation is devoid of a witness-access proviso. Consequently, PO1 Tee has not stated a viable claim with respect to this issue.[14] *Cf. Corrigan v. United States*, 694 F. App'x 798, 802 (Fed. Cir. 2017) (per curiam) (affirming dismissal for failure to state a claim upon which relief can be granted because the regulation at issue did not require the government to provide the relief sought).

In Count IV, PO1 Tee alleges a series of due process violations occurring during the PRB-2 hearing, including violations of the Uniform Code of Military Justice (UCMJ), the U.S. Naval Regulations, and the Naval Manual. The principal charge focuses on the PRB-2 reporter's alleged persistence in asking PO1 Tee sixty-four pre-planned questions notwithstanding the accused's steadfast invocation of his right against self-incrimination under Article 31 of the UCMJ. PO1 Tee asserts that the proverbial fruit of the poisonous tree further infected the PRB-2 proceedings during an off-the-record discussion among the board members, leaving at least one observer

---

necessary parts, elements, or steps" as well as "total, absolute"), available at https://perma.cc/M86R-EPD4; *cf. Complete in itself*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining complete in itself as "fully covering an entire subject").

[14] In the "Facts Pertinent to Count III" section of his amended complaint, PO1 Tee contends that his command attempted to obstruct justice by engaging in improper victim-witness coaching in violation of Article 131g of the UCMJ. *See* 10 U.S.C. § 931g (Wrongful Interference with Adverse Administrative Proceeding). This allegation is not repeated or otherwise referenced in PO1 Tee's Count III pleading. Defendant does not mention the accusation in their motion to dismiss. PO1 Tee, in turn, makes one passing reference to potential witness tampering in his response brief in addressing Count VII. Moving forward, the Court expects PO1 Tee to either prosecute or withdraw this serious charge. *See* RCFC 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion . . . the action or any claim against it.").

with the impression that the "spectacle" was designed "to demonstrate that [PO1] Tee invoked his right to remain silent because he had something to hide and because he was guilty."[15]  ECF 15-5 at 1.

Article 31 of the UCMJ, titled "Compulsory self-incrimination prohibited," provides, in relevant part:

> (a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.
>
> . . . .
>
> (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him *in a trial by court-martial*.

10 U.S.C. § 831 (emphasis added).  In the course of a PRB hearing—as opposed to a court-martial—Section 831(a) of the UCMJ must be read in conjunction with Section 6-12 of the Naval Manual, and as emphasized in the above-quoted statute, Section 831(d) of the UCMJ is seemingly inapplicable.

Section 6-12 of the Naval Manual explains: "The student, and/or the student's counsel, will be afforded the opportunity to make a statement on the student's behalf. At the senior member's discretion, any board member may ask the student or counsel to clarify any testimony or statements brought before the board."  NSTC M-1533.2E § 6-12 ¶ 3.  As reflected in a transcript submitted to the Court, at the commencement of the PRB-2 hearing, PO1 Tee's counsel made an opening statement on the student's behalf.  ECF 27-1 at 7–8.  Whether the recorder's proffered questions directed at PO1 Tee were duly sanctioned by the PRB-2's senior member, whether the questions were in fact clarifying questions reasonably tethered to PO1 Tee's counsel's opening statement, and whether the board members adopted an adverse inference from the fact that PO1 Tee refused to answer the recorder's questions, require a contextual review of the administrative record in this case.  The fact that the alleged due process violations spanned non-transcribed exchanges between board members during a recess from the PRB-2 hearing underscores this conclusion.  *Compare* ECF 27-1 at 32 (PRB-2 hearing audio recording stopped for thirty-nine minutes), *with* ECF 15-5 (witness/observer recollection of events during the PRB-2 hearing recess).  At this early stage, the Court declines the government's invitation to dismiss Count IV.

---

[15] *Cf. United States v. Carter*, 61 M.J. 30, 34 (C.A.A.F. 2005) ("Members of the armed forces, like their civilian counterparts, may not be compelled to incriminate themselves in a criminal case. The privilege against self-incrimination provides an accused with the right to not testify, and precludes 'comment by the prosecution on the accused's silence.'" (first citing U.S. CONST. amend. V; then citing 10 U.S.C. § 831(a); and then quoting *Griffin v. California*, 380 U.S. 609, 615 (1965))).

In Count V, PO1 Tee challenges the Navy's purported reliance on a BUMED letter dated April 20, 2024, in support of his disenrollment from the STA-21 program. The operative complaint, however, contains little in the way of specific factual allegations that the Navy relied on the BUMED letter, and the documents PO1 Tee cites for support scarcely substantiate his claim. The sole reference to the BUMED letter in the record presented is in the heading of the November 14, 2024 memorandum from the NSTC Commander directing the NROTC Commanding Officer to "complete the disenrollment process . . . ." ECF 1-8 at 2. The body of the memorandum does not discuss or even refer to the BUMED letter. Nor is there any indication that the letter was attached to the November 14, 2024 memorandum or referenced in the follow-on disenrollment paperwork. And nothing in the record presented suggests that the "mysterious letter from BUMED," ECF 15 at 20, was presented to or otherwise considered by the board in PRB-2.[16] *See, e.g.*, ECF 16-1 at 47–48 (PRB-2 convening order includes no reference to BUMED letter); ECF 27-1 at 4–6 (PRB-2 recorder did not list or reference BUMED letter when identifying the five exhibits presented); ECF 16-1 at 49–50 (PRB-2 report includes no reference to BUMED letter).

Notwithstanding the foregoing, and PO1 Tee's representation that he has "[n]ever seen or heard about the BUMED letter," PO1 Tee alleges: "On information and belief, the BUMED letter contains a finding that is 'adverse' to plaintiff and which recommended him to be medically and physically disqualified from STA-21." ECF 15 at 20–21. The Court is left to wonder what diagnosed medical condition would disqualify PO1 Tee from the STA-21 program yet allow him to return to active duty as an enlisted Sailor upon graduation. In any case, without the benefit of the BUMED letter, and without reading it in the context of an administrative record, the Court cannot determine the impact, if any, this mysterious document had on PO1 Tee's disenrollment. Accordingly, adjudication of PO1 Tee's claims relating to the referenced BUMED letter must await the presentation of a complete administrative record and more substantive briefing.

In Counts VII and VIII, PO1 Tee seeks to inject mandatory requirements into regulations that impart discretion. PO1 Tee contends in Count VII that his command was required to exhaust lesser punitive measures—including issuing a formal warning and placing him on probation—prior to convening a PRB and recommending his disenrollment from the STA-21 program. In support, PO1 Tee cites Section 6-7 of the Naval Manual, titled "Warning, Probation, and Leave of Absence." Rather than defer escalated sanctions until less-punitive measures have proven ineffective, however, Section 6-7 outlines the range of disciplinary measures available to the PNS and the procedures for imposing the discretionary sanction ultimately selected by the PNS.

---

[16] The April 20, 2024 BUMED letter post-dates the November 21, 2023 PRB-1 hearing.

14

> The introductory paragraph of Section 6-7 of the Naval Manual states:
>
> When counseling fails to correct substandard performance as defined in Chapter 3 [(Professional Development)], the actions below *should be considered*. Appendix B provides *guidelines* on the level of action in response to common issues. Unless clear from the onset that neither [a leave of absence] nor a recommendation for disenrollment is being considered, a PRB is required.

NSTC M-1533.2E § 6-7 (emphasis added). The use of "should be considered"—rather than "shall (or must) be considered"—denotes a recommendation rather than a requirement. *See W. Bay Builders, Inc. v. United States*, 85 Fed. Cl. 1, 20 (2008) ("Unlike 'shall,' 'should' is used to either express 'probability or expectation' or 'conditionality or contingency,' . . . and is indicative of permissive language . . . ." (first quoting AM. HERITAGE COLL. DICTIONARY 1284 (4th ed. 2004); and then citing *Dancy v. United States*, 668 F.2d 1224, 1228 n.10 (Ct. Cl. 1982))). Moreover, the term "consider" is readily distinguishable from other words that do not impart discretion, such as "adopt."[17] Referencing appended "guidelines" further underscores that what follows are suggestions, not hard-and-fast rules. And the third sentence resolves any lingering doubt, allowing for the option to consider a recommendation for disenrollment "from the onset." Finally, the ensuing definitions of the available sanctions highlight the discretion vested in the PNS.[18] Consequently, PO1 Tee fails to assert a claim upon which relief can be granted related to his charge that his superiors should have subjected him to lesser, preemptive punitive measures.[19] *See Bowles v. United States*, No. 14-1241C, 2015 WL 4710258, at *2 (Fed. Cl. July 31, 2015) ("If the plaintiff invokes a money-mandating provision, but the facts as pled do not fit within the scope of that law, . . . the court shall dismiss the claim on the merits under RCFC 12(b)(6).").

---

[17] *Compare Consider*, MERRIAM-WEBSTER (defining consider as "to think about carefully" and "to take into account"), *available at* https://perma.cc/VFM3-XTWU, *with Adopt*, MERRIAM-WEBSTER (defining "adopt" as "to accept and establish . . . in a formal or official way"), *available at* https://perma.cc/VAJ3-MHGC.

[18] *See* NSTC M-1533.2E § 6-7 ¶ 1 ("The decision to place a student on warning is at PNS discretion and does not require a PRB."), ¶ 2 ("The decision to place a student on probation is at PNS discretion and only requires a PRB if requested by the student."), ¶ 2(c)(1) ("The PNS may place students on disciplinary probation in lieu of disenrollment if it is believed the student can learn from their mistake and correct their actions."), ¶ 3 ("The decision to place a student on [leave of absence] is at the PNS discretion and, unless an exception is provided . . . , requires a PRB.").

[19] PO1 Tee denies receiving the counseling reported by his superior officer prior to the convening of PRB-1. If true, the disciplinary approach could be seen as literally inconsistent with the introductory phrase included in Section 6-7: "When counseling fails to correct substandard performance . . . ." NSTC M-1533.2E § 6-7. There is no corresponding requirement, however, that counseling is a mandatory precondition to seeking the imposition of more severe sanctions in all cases. Read in the context of the entire regulatory scheme, as this Court must do, counseling is another form of discipline available to—but not required of—the PNS depending on the circumstances presented.

15

In Count VIII, PO1 Tee challenges the PNS's decision to take disciplinary action based on an alleged aptitude deficiency rather than the commission of a serious offense (e.g., sexual harassment, moral turpitude, pattern of conduct unbecoming of an officer, repeated infractions of minor offenses). PO1 Tee cites Section 3-19 of the Naval Manual, which provides:

> <u>Aptitude Standards</u>. Aptitude is the perceived ability of a student to succeed in commissioned service. The delineation between satisfactory and substandard aptitude is a responsibility of the PNS. The PNS shall determine aptitude performance based on personal observation, counseling records, and discussions with unit personnel. . . .
>
> a. An aptitude deficiency exists when any of the following apply: commission of a major or minor offense . . . , poor display of leadership, . . . or poor personal conduct, such as irresponsibility in contracting debt.
>
> b. While term aptitude marks shall reflect all aptitude deficiencies, students who commit a major offense should be considered for a disciplinary disenrollment rather than an aptitude disenrollment . . . .

NSTC M-1533.2E § 3-19 ¶ 2.

Consistent with Section 6-7 of Naval Manual, discussed *supra*, Section 3-19 defers to the PNS's judgment when initiating the disciplinary process and determining the basis for that process. Just as in Section 6-7, Section 3-19 ¶ 2(b) employs the discretionary "should be considered"—rather than "shall (or must) be considered"—in deciding whether to pursue disciplinary disenrollment rather than aptitude disenrollment. PO1 Tee's reliance on paragraph 2(b) is further undermined by the preceding paragraph, which defines "aptitude deficiency" to include "commission of a major or minor offense." *See* NSTC M-1533.2E § 3-19 ¶ 2(a). The PNS's decision to judge PO1 Tee on an aptitude basis, therefore, did not violate the applicable discretionary regulations.[20]  *See Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) ("If . . . the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be

---

[20] PO1 Tee's alternative appeal to the "arbitrary and capricious" standard is similarly unavailing. "Where the law grants the military discretion in a matter, the military's exercise of that discretion is a nonjusticiable question." *Antonellis v. United States*, 106 Fed. Cl. 112, 115 (2012) (first citing *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988); and then citing *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953)). In asking the Court to review whether the Navy's exercise of discretion was arbitrary and capricious, PO1 Tee seeks judicial review of a substantive military decision—an inquiry that is quintessentially "beyond the institutional competence of courts to review." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (citing *Voge*, 844 F.2d at 780).

16

granted." (citing *Fisher*, 402 F.3d at 1175–76 (en banc portion))), *cited in Bowles*, 2015 WL 4710258, at *2.

## CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss (ECF 16) is GRANTED-IN-PART and DENIED-IN-PART. Specifically, defendant's motion to dismiss is GRANTED as to Counts I, II, and VI–IX. Defendant's motion to dismiss is further GRANTED with respect to Counts III and IV insofar as they relate to PRB-1. Defendant's motion to dismiss is DENIED as to Count V and the remaining claims asserted in Counts III and IV. Defendant's motion for an extension time (ECF 30) is DENIED as moot. Pursuant to RCFC app. K § III, the parties shall file a joint status report on or before November 24, 2025, proposing a schedule of continued proceedings.

It is so **ORDERED**.

Armando O. Bonilla
Judge